## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEPHEN K. BIEBER** and **KAREN BIEBER,** : | **CIVIL ACTION NO. 1:10-CV-0718** |
| : | |
| : | **(Judge Conner)** |
| **Plaintiffs** : | |
| : | |
| v. : | |
| : | |
| **DAVID J. NACE** and **EASTERN** : | |
| **INDUSTRIES, INC.,** : | |
| : | |
| **Defendants** : | |

## <u>MEMORANDUM</u>

Presently before the court are four motions in limine (Docs. 75, 77, 79, 88) to preclude evidence and testimony at the trial in the above-captioned matter set to commence tomorrow, Wednesday, March 7, 2012.  Defendant Eastern Industries, Inc.  ("EII") filed three of the four motions, (<u>see</u> Docs. 75, 77, 79),[1] and plaintiffs Stephen and Karen Bieber ("the Biebers") filed the fourth motion.  (Doc. 88).  The final brief on these issues was filed at 2:55 p.m. yesterday.  For the reasons that follow, the court will grant in part and deny in part the motions.

## I.    <u>Background</u>

The Biebers bring this diversity action against David Nace ("Nace") and EII, stemming from a June 2, 2008, motor vehicle accident.  Mr. Bieber alleges that, on June 2, 2008, on Route 274 outside of Elliotsburg in Perry County, road construction workers for EII negligently and prematurely removed warning signs of a

---

[1]  EII also filed a motion for reimbursement of expenses and counsel fees (<u>see</u> Doc. 73), which the court will address separately at a later date.

construction zone for approaching traffic and failed to yield the right of way to

traffic when driving a construction truck out onto the highway.  Mr. Bieber claims

that the workers' negligent conduct combined with Nace's negligent operation of

his motor vehicle caused Nace to swerve into oncoming traffic and strike Mr.

Bieber, who was riding a motorcycle.  Mr. Bieber alleges that, as a result of the

accident, he sustained serious permanent injuries including the amputation of his

left leg.  EII claims that Nace was the sole cause of the accident.

On February 21, 2012, EII filed motions in limine to preclude portions of the

trial testimony of plaintiffs' experts Edward A. Perez, M.D. and Francis Camillo,

M.D. (Docs. 77, 79), as well as a motion in limine to preclude any reference that EII

employees put flags on temporary road construction signs after the June 2, 2008,

accident at issue in this case.  (Doc. 75).  On February 29, 2012, per court order, the

Biebers filed briefs in opposition to EII's motions, and in addition, filed their own

motion in limine to preclude any reference by defendants to (1) the Pennsylvania

Fair Share Act, (2) the risks inherent to motorcycling and (3) proximate causation

as noted by EII's expert Joseph P. Tarris.  (Doc. 88).  The motions have been briefed

and are ripe for disposition.

## II.   Discussion

### A.   EII's Motions in Limine

The court will first address EII's motions to preclude portions of the trial

testimony of Edward A. Perez, M.D. ("Dr. Perez") and Francis Camillo, M.D ("Dr.

Camillo").  (Docs. 77, 79).  EII contends that, in contravention of Federal Rule of

Civil Procedure 26(a)(2)(B) and 26(e), the Biebers failed to disclose prior to the trial

depositions of Dr. Perez and Dr. Camillo, that Mr. Bieber was being considered for

implantation of a spinal cord stimulator and that Mr. Bieber suffered from chronic

pain.  This information stems from a December 15, 2011, office note of Dr. Camillo.

EII asserts that it is prejudiced by counsel's failure to provide the office note prior

to the deposition because it prevented EII from preparing cross-examination on the

issues.  EII thus moves to preclude all testimony from Dr. Camillo and Dr. Perez on

the issues of a spinal cord stimulator and chronic pain.

Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure sets forth the

requirements of an expert witness' written report.  An expert report must contain a

complete statement of, and the basis and reasons for, all opinions the expert is to

express, all data and information considered by the expert in forming the opinions,

and any exhibits to be used to summarize or support the opinions expressed.  FED.

R. CIV. P. 26(a)(2)(B)(i)-(iii).  Counsel has a duty to supplement the information in

the report and the information given during the expert's deposition whenever there

are any additions or changes to the information, no later than the time the parties'

pretrial disclosures are due.  FED. R. CIV. P. 26(e).  When a party fails to supplement

the information, as required in Rule 26(a) and (e), "the party is not allowed to use

that information . . . to supply evidence . . . at a trial, unless the failure was

substantially justified or is harmless."  FED. R. CIV. P. 37(c)(1).  In determining

whether the exclusion of evidence is appropriate, the court must consider: (1)

prejudice or surprise to the party against whom the evidence would be admitted; (2)

ability of that party to cure the prejudice; (3) the extent to which the orderly and efficient trial of the case or other cases before the court would be disrupted by allowing the evidence; and (4) the bad faith or willfulness of the party failing to comply.  Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 148 (3d Cir. 2000) (citing Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 719 (3d Cir. 1997)).

The Biebers contend that they complied with their duty to supplement the information in their experts' reports and depositions under Rule 26(e).  Counsel for the Biebers avers that he received Mr. Bieber's updated medical records from Dr. Camillo's office on January 3, 2012—the day of the depositions of Dr. Camillo and Dr. Perez—and that he provided the records to counsel for EII before the depositions began.  (Doc. 91, at 2; Doc. 92, at 2-3).  Among the records was the December 15 office note concerning Mr. Bieber's visit approximately two weeks prior, in which Dr. Camillo noted Mr. Bieber's chronic back pain and discussed Mr. Bieber's candidacy for a pain stimulator.  (See Doc. 79-2, at 35).  The Biebers contend that Mr. Bieber's medical treatment and prognosis have evolved throughout this litigation, and it was well-known and expected that Mr. Bieber's medical care would continue to evolve until the time of trial.  (Doc. 91, at 2-4; Doc. 92, at 3-5).  Thus, the new recommendation that Mr. Bieber consider a spinal cord stimulator, they contend, is simply the next step in Mr. Bieber's continuing

treatment.[2]  Finally, the Biebers assert that EII cannot demonstrate any cognizable

prejudice from Dr. Camillo's and Dr. Perez's testimony on a spinal cord stimulator

and chronic pain, stemming from the December 15, 2011 office note.  (Doc. 91, at 5;

Doc. 92, at 5).[3]

The court finds that the Biebers satisfied their duty to supplement and that

EII will not be prejudiced by the testimony of Dr. Camillo and Dr. Perez concerning

the spinal cord stimulator.  Upon receiving the updated medical records, including

the December 15 office note, counsel for the Biebers promptly provided the records

to counsel for EII.  Both parties received the record on the same day, the day of the

trial depositions, and the record concerned a very recent event: a doctor's

appointment from a mere two and one half weeks prior.  The court finds no basis

for exclusion here.  To the extent that EII was surprised by the testimony regarding

the spinal cord stimulator, the prejudice is minimal.  It is no surprise to either party

that Mr. Bieber will require continued treatment and therapy.  (See Doc. 79-2, at 39

---

[2] The Biebers further argue that EII never inquired about getting any
updated records before the deposition and made no attempt to remedy the situation
by preventing the trial deposition from continuing or requesting time to consult
with its own expert.  (Doc. 91, at 4; Doc. 92, at 5).  The court rejects this argument.
Rule 26(e) places the burden squarely on the Biebers to supplement the reports and
deposition testimony of their experts.  See FED. R. CIV. P. 26(e).  EII was not
required to inquire about updated records.

[3] The Biebers argue, "what possible prejudice could come from the physician
voicing the possibility of employing a new modification for a vexing ongoing pain
condition?  Perhaps, the therapy will be successful and reduce the value of the pain
and suffering element of the claim arising from Eastern's negligence."  (Doc. 92, at
5).

(stating that Mr. Bieber "will need to participate in physical therapy throughout his life time as well as receive various injections.  He may even require surgery if he gets other fractures or develops more severe kyphosis")); Kiss v. Kmart Corp., No. Civ. A. 97-7090, 2001 WL 568974, at *6 (E.D. Pa. May 22, 2001) (rejecting plaintiff's argument that she suffered prejudice by the admission of testimony not contained in experts' original reports, and stating that "the testimony was clearly within the scope of the subject matter on which the experts opined and within their expertise. It is fundamental that any treatment of an alleged injury is within the scope of expert testimony regarding the injury").  Further, EII may consult with its expert regarding the spinal cord stimulator and address the issue at trial.  The orderly and efficient trial of the case will not be disrupted by admitting the testimony of Dr. Camillo and Dr. Perez regarding the spinal cord stimulator as they were already slated to testify about Mr. Bieber's treatment and condition.  Finally, the court can discern no delay, willfulness or bad faith on the part of the Biebers with regard to disclosing the December 15 office note; counsel for each of the parties received the records on the same day.  EII's motion in limine to preclude the testimony of Dr. Camillo and Dr. Perez concerning the spinal cord stimulator will be denied.

EII's motion in limine will also be denied with respect to Dr. Camillo's testimony on Mr. Bieber's chronic back pain.  Although the first time the word "chronic" is used to describe Mr. Bieber's back pain is in the December 15, 2011 office note, Dr. Camillo's May 2011 report clearly stated that "Mr. Bieber continues to have pain in his back. . . . I think that Mr. Bieber although he has done well, will

probably always have some pain from his back from these fractures.  He will

probably need therapy, continue with the injections." (Doc. 79-2, at 39).  The

medical definitions of "chronic" are: "a health-related state, lasting a long time,"

"exposure, prolonged or long-term, sometimes meaning also low intensity," and a

condition persisting 3 months or longer." STEDMAN'S MEDICAL DICTIONARY 376

(28th ed. 2006).  Dr. Camillo's December 15 office note in which he refers to Mr.

Bieber's back pain as chronic—by any definition of chronic—is consistent with Dr.

Camillo's May 2011 report that Mr. Bieber will always have some back pain.  The

court will therefore permit the jury to hear the testimony.

EII further moves to preclude the redirect examination of Dr. Camillo,

alleging that it exceeds the scope of cross-examination and is repetitive of direct

examination.  (Doc. 79 ¶ 17).  EII claims that its cross-exam of Dr. Camillo was

retrospective, focusing on the basis for Dr. Camillo's opinion on Mr. Bieber's back

pain and his opinion in his May 18, 2011, report.  EII contends that plaintiffs'

redirect was prospective, focusing on the possibility that Mr. Bieber will need

surgery in the future.  (Id. ¶ 19).  The Biebers counter that redirect of Dr. Camillo

focused on the very report that counsel for EII referred to on cross-examination,

and that all the questions focused on the post-accident condition of Mr. Bieber,

which was the essence of counsel's cross-examination.  (Doc. 92, at 12-14).

Generally, federal courts limit the scope of redirect examination to the

subject matter of the cross-examination.  Marks v. Marina Dist. Dev. Co., LLC, 213

Fed. App'x 147, 152 (3d Cir. 2007) (citing United States v. Riggi, 951 F.2d 1368, 1375

(3d Cir. 1971)).  However, the scope of a redirect examination is within the district court's discretion.  Id. (citing Government of Virgin Islands v. Martinez, 847 F.2d 125, 130 (3d Cir. 1988)).

A review of the transcript reveals that counsel for EII focused his cross-examination of Dr. Camillo on three points: (1)  Dr. Camillo's attribution of Mr. Bieber's back pain to the June 2008 accident, (2) that all Mr. Bieber's spinal fractures sustained from the accident have healed or "united," and (3) Dr. Camillo's opinion in his May 2011 report that Mr. Bieber has done well but will probably always have some back pain.  (See Doc. 79-2, at 18-19).  Counsel for the Biebers began redirect examination by focusing Dr. Camillo on his May 2011 report, specifically the paragraph in the report preceding his opinion about Mr. Bieber's progress, in which Dr. Camillo stated that Mr. Bieber may need surgery in the future.  (Id. at 19).  Redirect continued to focus on the potential need for back surgery depending on if or how Mr. Bieber's back condition and pain progressed in the future.  (Id. at 19-21).  Although admittedly a close call, the court finds the redirect to be within the scope of cross-examination.  Cross-examination refers to Mr. Bieber's post-accident condition and redirect refers to the potential need for future surgical treatment if the post-accident condition alters or worsens.  The court will exercise its discretion and permit the jury to hear the redirect examination of Dr. Camillo.  EII's motion in limine to preclude the redirect is therefore denied.

Finally, in EII's third motion in limine, EII moves to preclude any reference to EII employees placing flags on temporary road construction signs after the June 2, 2008 accident. EII asserts that reference to such conduct is irrelevant to the instant action and inadmissible as a subsequent remedial measure under Federal Rule of Evidence 407. (Doc. 75).

In response, the Beibers state that they will not offer evidence that EII employees actually placed flags on construction road signs in a remedial effort. (Doc. 90, at 2). However, the Biebers intend to offer, as an admission, a statement in a post-accident document. (Id.) On a "Construction Zone Vehicular Accident Report," in response to a question regarding any changes to the project's traffic control methods as a result of the accident, an EII employee wrote "Contractor has decided to put flags on all signs when working." (Doc. 90, Ex. A). The Biebers assert that EII has argued throughout the litigation that the signs marking the work zone had nothing to do with the accident, and the Accident Report is an admission that EII really believed otherwise. (Doc. 90, at 3). According to the Biebers, the statement is "highly probative [] evidence of Eastern's knowledge or sincere belief that, right after the accident, road construction signs were, in fact, causally reacted [sic] to this accident." (Id. at 4). The Biebers further contend that the evidence does not qualify as a "measure" under Rule 407, but is simply a recommendation made by EII employees after the accident. (Id.)

Under the rules of evidence, evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401.  All relevant evidence is admissible unless otherwise stated by the Constitution, statue or other Federal Rules.  FED. R. EVID. 402.  Federal Rule of Evidence 407 prohibits the admission of evidence that is otherwise relevant as follows:

> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, . . . , or a need for a warning or instruction.

FED. R. EVID. 407.

The court finds that the evidence of flags placed on signing after the accident is relevant to the extent that EII claims that signing issues did not contribute to the crash.  However, the court finds that Rule 407 bars its admission to show negligence or a need for a warning or instruction.  The court rejects the Biebers' argument that the Accident Report statement was a recommendation or suggestion that was not implemented, and therefore fails to qualify as a "measure" under Rule 407.  The Accident Report states "Document any changes or revisions made to the project's traffic control method as a result of the accident and the date they were implemented." (Doc. 90, Ex. A).  EII responded that it has decided to put flags on all signs when working.  (Id.)  Moreover, Darwin Steininger, the EII job superintendent testified in a deposition to the decision to place flags on all signs.

(Doc. 90, Ex. B).  Placing flags on road construction signs was thus not a mere

suggestion or recommendation.

Under the circumstances, the court concludes that the Biebers may use the

statement in the Accident Report for impeachment purposes only.  Rule 407 does

not preclude the admission of evidence of subsequent remedial measures when the

evidence is offered for impeachment purposes.  FED. R. EVID. 407 (stating that the

rule "does not require the exclusion of evidence of subsequent remedial measures

when offered for another purpose, such as . . . impeachment").  Therefore, the

motion in limine is granted in part. The court emphasizes that the Biebers shall be

prohibited from referencing the Accident Report in their opening statement to the

jury.

### B.      The Biebers' Motion in Limine

The Biebers move to preclude the defendants from referencing three

different topics.  First, they move to preclude at trial any reference to the

Pennsylvania Fair Share Act, signed into law on June 28, 2011.   (See Doc. 89, at 3).

The Act alters Pennsylvania law on joint and several liability, limiting a defendant's

liability for damages if the defendant is found to be less than 60 percent at fault.

The Act only applies to actions accruing after June 28, 2011.  Given that the

accident at issue occurred on June 2, 2008, the Biebers assert that the Act is

irrelevant and any reference to the law would be improper and prejudicial.  In

response, EII states that it has no intention of referencing, citing or otherwise

relying on the Act.  (Doc. 97, at 5).  The motion is therefore granted as unopposed.

The Biebers next move to preclude at trial any reference or suggestion that the risks inherent in motorcycling diminish defendants' responsibility for Mr. Bieber's injuries. Plaintiffs assert that there is no evidence of any contributory negligence on the part of Mr. Bieber, so any attempt to highlight the risks inherent in motorcycling would be improper and unfairly bias the jury. The Biebers also state that EII should be precluded from mentioning that Mr. Bieber was not wearing a helmet, noting that Pennsylvania law does not require a motorcycle operator to wear a helmet and there is no medical evidence relating any particular injuries to the presence of absence of a motorcycle helmet. (Doc. 89, at 5 n.1).

EII responds that any prejudices a juror may have regarding the risks inherent in motorcycling will be handled during voir dire, and, moreover, EII has not suggested that Mr. Bieber was comparatively negligent because he was riding a motorcycle rather than driving an automobile. (Doc. 97, at 5). With respect to the helmet issue, however, EII contends that Mr. Bieber's injuries were affected by the lack of helmet. (Id.) Thus, EII claims that evidence that Mr. Bieber was riding a motorcycle without wearing a helmet is relevant to the issue of damages. (Id. at 6).

As discussed above, Rules 401 and 402 concern the admissibility of relevant evidence. The dangers inherent to motorcycling are not relevant to whether EII or Mr. Nace were negligent in causing the motor vehicle accident at issue, and EII has indicated that it will not make such an argument at trial. However, the helmet issue, is a bit more complex. Simply because there is a Pennsylvania law that does not require a helmet, see 75 PA. CONS. STAT. § 3525(d), does not mean that the fact

that Mr. Bieber was not wearing a helmet is irrelevant or inadmissible.[4]  The jury

cannot find Mr. Bieber negligent *per se* for not wearing a helmet, but the lack of a

helmet is relevant to the injuries sustained, to the extent EII can show that the

injuries would have been less severe had Mr. Bieber been wearing a helmet.  EII

has the burden of proof of establishing a causal connection between the injuries

and the lack of helmet.  The Biebers assert, however, that there is no medical

evidence relating any of Mr. Bieber's injuries to the presence or absence of a

helmet.  (Doc. 89, at 5 n.1).  Without evidence connecting Mr. Bieber's injuries to the

lack of helmet, Mr. Bieber's failure to wear a helmet is not admissible.  Any

reduction in damages on the basis of the lack of a helmet would be pure speculation

by the jury.  Therefore, the motion to preclude evidence that Mr. Bieber was not

wearing a helmet at the time of the accident is conditionally granted.  Defendants

may not introduce evidence of the lack of helmet unless they have evidence causally

connecting Mr. Bieber's injuries to the failure to wear a helmet.

Finally, the Biebers move to preclude EII's liability expert, Joseph P. Tarris

from opining that the entrance of the EII construction truck onto the eastbound

lane of Route 274 "was not a proximate cause" of the accident.  (Doc. 89, at 5).  The

Biebers contend that the opinion referencing proximate causation fails to properly

---

[4] By statute, minors under the age of 12 who ride bicycles are required to wear a helmet. See 75 PA. CONS. STAT. § 3510. Interestingly, the statute makes evidence of a violation of the statute inadmissible in civil actions, and the failure to wear a helmet is not to be considered contributory negligence. Id. § 3510(c). There is no similar provision in the motorcycle helmet law that deems evidence of lack of a helmet inadmissible in civil actions. See 75 PA. CONS. STAT. § 3525.

reflect Pennsylvania law, which requires the plaintiff to show that defendants' negligence is a factual cause of plaintiffs' injuries. (Id.) Moreover, the Biebers assert, a determination of causation is within the sole province of the jury, and therefore any reference to causation by Mr. Tarris should be stricken.

EII argues that the Biebers have not challenged Mr. Tarris' qualifications to opine about traffic safety and advance warning duties and whether EII breached these duties, and counters that although "proximate cause" has become an antiquated term, the theory behind its application remains the same in that the plaintiff must prove that the defendant was the factual and legal cause of his damages. (Doc. 97, at 6-7). EII further contends that causation is a matter generally requiring expert testimony, and the Biebers' own expert, Steven Schorr, P.E., has opined about causation. (Id. at 7-8).

Federal Rule of Evidence 702 governs the admissibility of expert witness testimony and provides that an expert witness may testify to scientific, technical or specialized knowledge, "in the form of an opinion or otherwise" if it will assist the trier of fact to understand the evidence or determine a fact in issue, and "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED. R. EVID. 702. Under Pennsylvania

law, to establish negligence, a plaintiff must prove duty, breach, causation and

damages.  See Sodders v. Fry, 32 A.2d 882, 887 (Pa. Commw. Ct. 2011).[5]

With respect to the issue of causation, medical experts are frequently called

upon to offer opinions on the cause of a plaintiff's injuries.  The rationale, according

to the Pensylvania Supreme Court, is that "[a]lthough in certain situations

involving physical injury, it is possible for a jury reasonably to infer causation from

the circumstances of an accident or occurrence, it is generally acknowledged that

the complexities of the human body place questions as to the cause of pain or injury

beyond the knowledge of the average layperson."  Hamil v. Bashline, 392 A.2d 1280,

1285 (Pa. 1978).  The expert testimony at issue here concerns the cause of the

accident itself, not the cause of injuries sustained by Mr. Bieber (an issue for which

---

[5]  Pennsylvania Suggested Standard Civil Jury Instructions refer to the causation requirement as "factual cause" and suggest the following instruction:

> In order for the plaintiff to recover in this case, the defendant's [[negligent] [reckless] [intentional]] conduct must have been a factual cause in bringing about harm.  Conduct is a factual cause of harm when the harm would not have occurred absent the conduct.  To be a factual cause, the conduct must have been an actual, real factor in causing the harm, even if the result is unusual or unexpected.  A factual cause cannot be an imaginary or fanciful factor having no connection or only an insignificant connection with the harm.
> To be a factual cause, the defendant's conduct need not be the only factual cause.  The fact that some other causes concur with the negligence of the defendant in producing the injury does not relieve the defendant from liability as long as [his] [her] own negligence is a factual cause of the injury.

PA. SUGGESTED STANDARD CIV. JURY INSTRUCTIONS § 13.160 (4th ed. 2011).

Mr. Bieber will present medical expert opinions).[6]  However, from the medical

expert perspective, it is clear that evidence on causation is appropriate when it will

assist a lay juror in understanding an issue beyond the average lay juror's

knowledge.  In other words, expert testimony is admissible if it will "assist the trier

of fact to understand the evidence or to determine a fact in issue."  FED. R. EVID.

702.

The court notes that both EII's expert and the Biebers' expert, (Mr. Schorr),

have provided opinions on causation, although Mr. Schorr does not specifically

employ the word "cause."  (See Doc. 97-2, at 30).   Instead, Mr. Schorr employs the

term "led to," stating that "the hazard that **led to** the braking of Ms. Battiste and

the subsequent avoidance actions of Mr. Nace was created by the unexpected

presence of the construction vehicle entering the roadway," and in failing to follow

proper industry procedures, "the construction vehicle created a hazardous

condition that ultimately **led to** the collision in question."  (Id. (emphasis added)).

---

[6] The case of Salamone v. Wal-Mart Stores East, LP, Civ. A. No. 10-CV-892, 2011 WL 2787788, at *5 (E.D. Pa. July 15, 2011), cited by the Biebers for the proposition that the causation determination is within the sole realm of the jury, is inapposite.  First, the case concerned the testimony of a medical expert on the cause of the plaintiff's injuries.  Second, the court in Salamone found the plaintiff's medical expert to be unreliable, and excluded the expert's testimony not because it is inappropriate for an expert to testify on causation but because the expert "ha[d] no basis for attributing causation to the incident."  Id. at *5 (also stating that "Dr. Biester's report fails to establish causation, in part, because she did not review any of Ms. Salamone's medical records that pre-date her fall, and therefore, ignored may of the symptoms Ms. Salamone was complaining of before her slip and fall. Moreover, the only evidence of causation was Ms. Salamone's self-serving statements and those statements were inconsistent with the accident reports and the medical records . . . .").

It appears from the expert reports that both Mr. Schorr and Mr. Tarris are forensic engineering/reconstruction experts who have surveyed the accident site and topography, obtained measurements from the scene and conducted "avoidance" and/or "site distance" analyses. (See Doc. 97-2, at 5-31). Consequently, both have rather pointed opinions about whether EII violated industry procedure and the ultimate result of any such violations. Mr. Schorr opined that there were violations which ultimately led to (caused) the collision, (see id. at 30), and Mr. Tarris opined that there were no violations, thus conduct by EII employees did not cause (lead to) the collision. (Id. at 13-15). It is appropriate for the experts to testify to whether EII violated industry procedure or Commonwealth laws applicable to maintaining a construction zone. The court will permit this testimony, as well as the testimony regarding the cause of the crash. The court finds that the expert testimony will assist the trier of fact. Admitting the testimony will not impede the jury's function. The ultimate determination of causation, as well as the credibility of Mr. Schorr and Mr. Tarris, are issues for the jury. The motion in limine is therefore denied with respect to Mr. Tarris' testimony.

## III.   Conclusion

For the reasons set forth above EII's motions in limine (Docs. 77, 79) to exclude the testimony of Dr. Perez and Dr. Camillo are denied. EII's motion in limine (Doc. 76) to preclude reference to EII employees placing flags on road construction signs subsequent to the June 2, 2008 accident is granted in part and denied in part. The Biebers' motion in limine to preclude reference to the

Pennsylvania Fair Share Act and the dangers inherent in motorcycling are granted.

The motion to preclude evidence that Mr. Bieber was not wearing a helmet is

conditionally granted and the motion in limine with respect to EII's expert

testimony on causation is denied.  An appropriate order is attached.


    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:       March 6, 2012

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STEPHEN K. BIEBER and KAREN BIEBER,** | : | **CIVIL ACTION NO. 1:10-CV-0718** |
| | : | |
| | : | **(Judge Conner)** |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **DAVID J. NACE and EASTERN INDUSTRIES, INC.,** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 6th day of March, 2012, upon consideration of the motions in

limine (Docs. 75, 77, 79) filed by defendant Eastern Industries, Inc., and upon

further consideration of the motion in limine (Doc. 88) filed by Stephen and Karen

Bieber, and for the reasons set forth in the accompanying memorandum, it is

hereby ORDERED that:

1.  The motion in limine (Doc. 75) of defendant Eastern Industries, Inc. to
    preclude any reference to Eastern Industries, Inc. employees placing
    flags on temporary road construction signs after the June 2, 2008,
    accident is GRANTED in part as follows:

    a.  The Biebers may use the statement in the Construction Zone
        Vehicular Accident Report (Doc. 90, Ex. A) for impeachment
        purposes only.

    b.  The Biebers are prohibited from referencing the Accident
        Report in their opening statement to the jury.

2.  The motion in limine (Doc. 77) of defendant Eastern Industries, Inc. to
    preclude portions of the trial testimony of plaintiffs' expert Edward A.
    Perez, M.D. is DENIED.

3.      The motion in limine (Doc. 79) of defendant Eastern Industries, Inc. to
        preclude portions of the trial testimony of plaintiffs' expert Francis
        Camillo, M.D. is DENIED.

4.      The motion in limine (Doc. 88) of plaintiffs Stephen and Karen Bieber
        to preclude any reference by defendants to the Pennsylvania Fair
        Share Act, the risks inherent to motorcycling, and/or to proximate
        causation is granted in part and denied in part as follows:

        a.      The motion is GRANTED with respect to the Pennsylvania Fair
                Share Act and the dangers inherent in motorcycling.

        b.      The motion is CONDITIONALLY GRANTED with respect to
                evidence that Mr. Bieber was not wearing a helmet at the time
                of the accident.  Eastern Industries, Inc. may introduce the
                evidence only if it has evidence causally connecting the injuries
                sustained to the lack of a helmet.

        c.      The motion is DENIED with respect to Eastern Industries, Inc.'s
                expert testimony on causation.


                              S/ Christopher C. Conner
                              CHRISTOPHER C. CONNER
                              United States District Judge